## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**MUSHANIA SCOTT**

   *Plaintiff*

v.                                                    **Case No. SA-22-CV-0052-JKP**

**STRUGA MANAGEMENT,**

   *Defendant*.

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (ECF No. 12). Plaintiff has filed a response[1] (ECF No. 14) to which Defendant has filed no reply. After considering the motion and applicable law, the Court grants the motion and dismisses Plaintiff's claims.

### I. BACKGROUND

Plaintiff filed her original complaint on January 24, 2022. ECF No. 1. Thereafter, the Court denied Plaintiff's Motion to Seek Default Judgment, granted Defendant's Motion for More Definite Statement, and set an April 19, 2023 deadline for Plaintiff to amend her complaint. ECF No. 10 at 4. On April 19, 2023, Plaintiff filed her amended complaint. ECF No. 11. This is the live pleading before the Court. On April 28, 2023, Defendant filed its motion to dismiss (ECF No. 12), to which Plaintiff responded (ECF No. 14).

Plaintiff alleges three claims in this case: (1) an unfair labor practices claim under 29 U.S.C. § 158, which arises under the National Laor Relations Act ("NLRA"); (2) unlawful surveillance – Recovery of Civil Damages Authorized under 18 U.S.C. § 2520; and (3) unlawful termination of

---

[1] Plaintiff's response is titled "Plaintiff's Opposing To the Defense's Motion to Dismiss An Amended Complaint."

her employment under 42 U.S.C. § 1981.

Plaintiff was employed by Struga Management from on or about March 16, 2016, to on or about January 22, 2019. ECF No. 14 at 1-2. Plaintiff's claims arise from the following facts. On January 22, 2019, Plaintiff noticed packages addressed to tenants that were opened in the "key room," which appears to be a holding area for tenant packages. ECF No. 11 at 1; ECF No. 14 at 1. After discovering the opened packages in the key room, Plaintiff brought the matter to the property manager's attention. ECF No. 11 at 2-3; ECF No. 14 at 1. Consuelo Corona, the property manager, stated she would address the matter on January 23, 2019. ECF No. 11 at 3. On January 23, 2019, Ms. Corona sent Monica Robles, another Struga employee, to the property to speak with a resident. *Id*. Plaintiff and Diana Lane, a Struga employee, were inside the key room. *Id*. Ms. Lane asked Plaintiff about the opened packages, and Plaintiff stated she did not know who opened the items. *Id*. Plaintiff told Ms. Lane that she observed Ms. Robles opening tenant packages in the key room a year prior to this incident. *Id*. Ms. Robles was not in key room when Plaintiff and Ms. Lane were discussing the prior incident. *Id*. Plaintiff alleges Ms. Robles became annoyed with her and Ms. Lane because she overheard their conversation and threatened to play the audio recording of their conversation to other Struga employees. *Id*. Plaintiff also alleges Ms. Robles recorded her conversation with Ms. Lane on her (Ms. Robles's) personal cell phone and then shared the contents of the recording with Ms. Corona. *Id*.

Ms. Corona told Plaintiff she would investigate the matter regarding the opened packages. *Id*. Plaintiff told Ms. Corona about the 2022 incident involving Ms. Robles opening resident packages. *Id*. After discussing the open package incidents with Defendant's home office, Ms. Corona informed Plaintiff that she (Ms. Corona) was directed to terminate Plaintiff's employment for violating company policies. *Id*. Plaintiff alleges Ms. Corona told Plaintiff that her failure to

report the 2022 open package incident violated company policy. *Id*. Plaintiff alleges she was not aware of any such policy prior to her termination. *Id*. Plaintiff alleges that she and Ms. Lane were the only people present in the key room when they discussed the incidents involving opened tenant packages. *Id*. She also alleges she was not aware that Ms. Robles recorded her conversation with M.s Lane. *Id*.

After Defendant terminated Plaintiff's employment, Plaintiff learned that Defendant began evicting Black or African American tenants. *Id*. She further alleges all Black tenants who rented from her were evicted. *Id*. Plaintiff states "[m]y termination resulted in evictions of black residents." *Id*.

## II. MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant seeks to dismiss all claims asserted by Plaintiff. Under Rule 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." As required by Fed. R. Civ. P. 8(a)(2), every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Such requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When ruling on a motion to dismiss, courts "accept all well-pled facts as true, construing all reasonable inferences in the [operative pleading] in the light most favorable to the plaintiff." *White v. U.S. Corr., LLC*, 996 F.3d 302, 306-07 (5th Cir. 2021). But courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (citations and internal quotation marks omitted). "And despite the natural focus on the allegations of the operative pleading, the party moving for dismissal under Rule 12(b)(6) has the burden to show that dismissal is warranted." *C.M. v. United*

*States*, ___ F. Supp. 3d ___, ___, No. 5:21-CV-0234-JKP-ESC, 2023 WL 3261612, at *44 (W.D. Tex. May 4, 2023) (citing *Cantu v. Guerra*, No. SA-20-CV-0746-JKP-HJB, 2021 WL 2636017, at *1 (W.D. Tex. June 25, 2021)).

A well-pleaded pleading "may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). Nevertheless, parties asserting a claim must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Parties need not plead the legal basis for a claim, but they "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam). And they satisfy that standard when they allege "simply, concisely, and directly events" that are sufficient to inform the defendant of the "factual basis" of their claim. *Id.*

Facts alleged by the plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

> To withstand a motion to dismiss under Rule 12(b)(6), a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail. Facts that only conceivably give rise to relief don't suffice. Thus, though we generally take as true what a complaint alleges, we do not credit a complaint's legal conclusions or threadbare recitals of the elements of a cause of action.

*Smith v. Heap*, 31 F. 4th 905, 910 (5th Cir. 2022) (quoting *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021)). As *Twombly* states, to avoid dismissal under Rule 12(b)(6), plaintiffs must allege facts that "nudge" an asserted claim "across the line from conceivable to plausible." 550 U.S. at 570. The focus is not on whether the party asserting the claim will

4

ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8. Courts, of course, liberally construe pleadings of a pro se litigant, like Plaintiff here. *Haines v. Kerne*r, 404 U.S. 519, 520-21 (1972) (per curiam). But that does not dispense with the pleading requirements of Rule 8(a) as interpreted by *Iqbal* and *Twombly*.

Further, while asserted defenses may support dismissal under Rule 12(b)(6), they only do so when the operative "pleading conclusively establishes the affirmative defense." *Reagan v. U.S. Bank, Nat. Ass'n*, No. CIV.A. H-13-00043, 2013 WL 510154, at *2 (S.D. Tex. Feb. 12, 2013) (addressing res judicata defense). And, although parties may raise defenses through a motion to dismiss under Rule 12(b)(6), the courts view them through the standards applicable to such motions.

## A. UNFAIR LABOR PRACTICES

Plaintiff's first asserts a claim of unfair labor practices by Defendant under 29 U.S.C. § 158. *See* ECF 11 ¶ 4. More particularly, she alleges that Defendant's

> so called policy not to speak to [a] coworker regarding whom I believe was behind stealing residents packages is prohibited under **29 U.S.C. § 158** as that is an act of interference with the right to self - organization and engaging in other concerted activity for the purpose of collective bargaining and mutual aid to find a solution arised an my job with coworkers for the benefit of my employer and us as employees.

*Id*. (without modifying grammatical mistakes). In response to Defendant's motion to dismiss, Plaintiff states Defendant's policy which prevented her from speaking to anyone about the improper opening of resident packages violates § 158(a)(1). ECF 14 at 3.

As codified at 29 U.S.C. § 157, the NLRA provides employees with certain rights in the workplace, which include the right to "self-organization, to form, join, or assist labor organizations, [and] to bargain collectively through representatives of their own choosing." The

statute reads in full:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3)of this title.

Section 8(a) of the NLRA, as codified at 29 U.S.C. § 158(a), identifies conduct by employers which constitute unfair labor practices. It is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1). Construing Plaintiff's claim liberally, she appears to allege that Defendant engaged in an unfair labor practice under § 158 by restraining her rights under § 157 when Ms. Corona told her not to talk to anyone about another employee opening resident packages. Plaintiff contends Defendant, through Ms. Corona, restrained her right to self-organization when Ms. Corona did not allow her to speak with Ms. Lane about the improper opening of resident packages. ECF No. 11 ¶ 4; ECF No. 14 at 2-3. Plaintiff alleges she was not aware of a policy that prohibited employees from discussing problems concerning other employees opening resident packages. ECF No. 14 at 3.

**Lack of Jurisdiction Regarding Plaintiff's NLRA Claim**

The Fifth Circuit has long held that, under Fed. R. Civ. P. 12(h)(3), the federal courts "have the responsibility to consider the question of subject matter jurisdiction sua sponte if it is not raised by the parties and to dismiss any action if such jurisdiction is lacking." *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985). Rule 12(h)(3) provides in full: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

The Court does not have subject matter jurisdiction over Plaintiff's § 158(a)(1) claim. The Supreme Court has stated "[w]hen an activity is arguably subject to § 7 [(29 U.S.C. § 157)] or § 8

[(§ 158)] of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). *Garmon* preemption applies to suits in state and federal courts. *See Hobbs v. Hawkins*, 968 F.2d 471, 477 n.5 (5th Cir. 1992). As codified at 29 U.S.C. § 160, the NLRA (a) generally identifies the powers of the of the Board; (b) provides for a complaint, notice of hearing, and answer; (c) addresses memorializing testimony and findings; (d) permits modification of findings or orders prior to filing the record in court; (e) allows court enforcement of the Board's order; and (f) establishes review of final order of the Board by an appellate court. *See* 29 U.S.C. § 160(a)-(f).

A district court in this circuit disposed of claims that should have been brought before the NLRB citing to the same statutory references as this Court. *See Davis v. Libbey Glass Inc.*, No. CIVIL 08-1213, 2008 WL 4925025, at *5 (W.D. La. Nov. 14, 2008). In *Davis*, Judge Stagg stated:

> Under the NLRA, Congress created the National Labor Relations Board ("NLRB") to prevent any person from engaging in any unfair labor practice. *See* 29 U.S.C. § 153 and § 160. Whenever there is a charge of an unfair labor practice, the NLRB shall have the power to conduct a hearing to determine the merits of the charge. *See* 29 U.S.C. § 160(c). The NLRB issues findings of facts and an appropriate order to remedy the unfair labor practice. *See id.* After the remedial order, an aggrieved party may obtain review from the appropriate court of appeal. *See* 29 U.S.C. § 160(f). Thus, the NLRB has "exclusive jurisdiction to prevent and remedy unfair labor practices by employers and unions." *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108, 110 S. Ct. 444, 450, 107 L.Ed.2d 420 (1989).

Plaintiff's § 158(a)(1) falls directly within the NLRB's exclusive jurisdiction and must be dismissed, without prejudice, because the Court lacks subject matter jurisdiction over this claim.

## B. UNLAWFUL SURVEILLANCE CLAIM

### Recovery of Civil Damages Authorized under 18 U.S.C. § 2520

Plaintiff alleges Ms. Robles unlawfully recorded her conversation with Ms. Lane and seeks relief under 18 U.S.C. § 2520. Defendant contends that this claim is a pendent state common law

claim for invasion of privacy. ECF No. 12 ¶ 10. Relying on its contention that Plaintiff's claim is a Texas common law invasion of privacy claim, Defendant argues Plaintiff's claim is barred by Texas's two-year statute of limitations for such claims. *Id*. ¶¶ 11-12. Reviewing Plaintiff's amended complaint and response to Defendant's motion to dismiss, it is clear Plaintiff is only seeking relief under the federal statute. ECF. No. 14 at 3-4.

Section 2520 provides a civil cause of action for the recovery of damages for "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." An aggrieved party, such as the Plaintiff here, may sue "the person which engaged in that violation." 18 U.S.C. § 2520(a). "Person" is defined as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." *Id*. § 2510(6). Claims brought under § 2520 must be filed within two years "after the date upon which the claimant first has a reasonable opportunity to discover the violation." *Pringle v. Schleuter*, 388 F. App'x 449, 450 (5th Cir. 2010) (per curiam) (quoting 18 U.S.C. § 2520(e)). "The limitation period begins to run once the plaintiff has enough notice as would lead a reasonable person to either sue or launch an investigation." *Id*. (citing *Sparshott v. Feld Entm't, Inc.,* 311 F.3d 425, 429 (D.C. Cir. 2003)).

On January 22, 2019, Plaintiff discovered opened resident packages. She reported the matter to Ms. Corona. Plaintiff, in her response, stated "[the] next day Consuelo sent Monica Robles out on property to talk to a resident." ECF No. 14 at 1. "Diana Lane and [Plaintiff], were in the office at the time and went inside the key room." *Id*. Plaintiff and Ms. Lane discussed the issue of opened packages in the key room. *Id*. Therefore, the conversation that Ms. Robles recorded occurred on January 23, 2019. Plaintiff also stated, "[a] few hours later, Stephanie Reyes informed us that Monica went to the Vineyard House and played the recording to Michelle, our district

Manager and herself." *Id*. at 2. Therefore, Plaintiff was aware that Ms. Robles recorded and disclosed the conversation she had with Ms. Lane on January 23, 2019. Plaintiff's amended complaint is consistent with her response to Defendant's motion to dismiss. Plaintiff alleges,

> When Monica Robles came back into the office she did not inform us, (Diana and I) that she was recording our conversation, when we w[ere] in the key room. Monica was not with us in key room at the time Diana asked me the question as to whom I thought was behind the opening of the packages. ***Monica became annoyed with us because she overheard our conversation, and informed us that she was going to play the audio to the other co-workers at the other property (Vineyard House). Stephanie, confirmed that Michelle and Mrs. Corona also heard the audio recording Monica had recorded on her personal cell phone, without our permission.***

ECF No. 11 at 3 (emphasis added).

Plaintiff was clearly aware Ms. Robles recorded her conversation with Ms. Lane and divulged the contents of the recorded call to others prior to her termination on January 24, 2019. Plaintiff filed her complaint on January 24, 2022 – three years after the date of her termination. Plaintiff had enough notice to lead her to sue or launch an investigation by no later than January 24, 2019. The face of the complaint establishes Defendant's contention that the statute of limitations had run for Plaintiff's unlawful surveillance claim.

Assuming Plaintiff asserts a common law claim for invasion of privacy under Texas law, the result would be the same. Texas sets a two-year statute of limitations for an invasion of privacy cause of action. *See Boothe v. Boothe*, No. 01-96-315-CV, 1996 WL 659411, at *1 (Tex. App.— Houston [1st Dist.] Nov. 14, 1996, no writ) (not designated for publication) (two-year statute of limitations for claims for invasion of privacy under Tex. Civ. Prac. & Rem. Code § 16.003(a)). Courts have also determined that the two-year statute of limitations applies to the Texas Wiretap statute, Tex. Civ. Prac. & Rem. Code § 123.002. *Collins v. Collins*, 904 S.W.2d 792, 804 (Tex. App.—Houston [1st Dist.] 1995), *writ denied per curiam*, 923 S.W.2d 569 (Tex. 1996).

Because Plaintiff's amended complaint shows that 18 U.S.C. § 2520(e) bars her § 2520 claim, the Court dismisses this claim. And, as discussed, to the extent the claim arises under Texas law it is likewise barred by limitations.

**C. 42 U.S.C. § 1981**

Plaintiff also asserts a claim under 42 U.S.C. § 1981. Section 1981(a) states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." Section 1981(b) defines "Make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." To establish a § 1981 claim for contractual discrimination, plaintiffs must allege that (1) they are members of a racial minority; (2) defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute—here, making a contract. *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994). Plaintiff has the burden of initially pleading facts that, taken as true, permit the court to plausibly infer that, "but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

"Although 'naked allegations' of discriminatory intent are too conclusory to survive a motion to dismiss, . . . discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citations omitted). "An allegation that similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the section 1981 claim." *Id.* At will employees may assert claims under § 1981. *Byers v. Dallas Morning*

*News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000).

Plaintiff alleges Defendant terminated her employment while at the same time it evicted four black families from the Vineyard Gardens apartment complex. ECF No. 11 at ¶ 9. Plaintiff believes Defendant, acting through Ms. Corona, exhibited racial animus towards the black families. *Id*. at ¶ 10. She states "[i]t is my believe [sic] that my employment contract was terminated under pretext reasons, as I am a black person too." *Id*. All of the evicted black tenants signed their lease agreements with Plaintiff during her term of employment with Defendant. *Id*.; *see also*, ECF No. 14 at 2.

Defendant contends Plaintiff has not alleged facts to establish an intent to discriminate because of race or that she was terminated but for her race. ECF No. 12 at ¶ 14. The crux of Defendant's argument is that Plaintiff seeks to draw a connection between her termination and the eviction of black families. *Id*.

The Court must accept Plaintiff's well pleaded facts as true, but Plaintiff's § 1981 claim is based on her unsupported conclusion that she was terminated because of her race. Plaintiff expresses a genuine and sincere subjective belief that she was terminated because she is a black woman, but her claim is based on nothing more than her speculation that there is a connection between her termination and the eviction of black tenants. Plaintiff has not plausibly alleged a viable § 1981 claim.

### III. LEAVE TO AMEND

In general, the Court considers whether it should grant a plaintiff leave to amend when it has determined that Fed. R. Civ. P. 12(b)(6) warrants dismissal. Leave to amend is not required, however, when plaintiffs have already pled their "best case." *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam). *Id*. at 768. Whether to grant leave to amend is within the Court's sound discretion. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375,

387 (5th Cir. 2003). Notably, a "party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals." *Id.*

Plaintiff has not asked to amend her complaint. Moreover, the Court has previously ordered her to file an amended complaint to provide a more definite statement of her claims. Although she filed an amended complaint, she does not provide enough factual allegations to support the two claims over which this Court has jurisdiction. Based upon all of the foregoing, the Court finds that Plaintiff has stated her best case and thus declines to exercise its discretion to permit the filing of another amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 12) and **DISMISSES** this action. This dismissal is with prejudice, except as to the National Labor Relations Act claim, which is dismissed without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED this 9th day of February 2024.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**